JOSEPH W. COTCHETT (Cal. SBN 36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (Cal. SBN 168009)
mmolumphy@cpmlegal.com
NANCI E. NISHIMURA (Cal. SBN 152621)
nnishimura@cpmlegal.com
ARON K. LIANG (Cal. SBN 228936)
aliang@cpmlegal.com
MATTHEW K. EDLING (Cal. SBN: 250940)
medling@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel:   (650) 697-6000
Fax:   (650) 697-0577

Attorneys for Plaintiff Stanley Morrical,
derivatively on behalf of Hewlett-Packard
Company, in the action entitled,
*Morrical v. Margaret C. Whitman, et al.*, 12-CV-06434

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP RICCARDI,<br><br>Plaintiff,<br>v.<br><br>MICHAEL R. LYNCH, *et al.*,<br><br>Defendants,<br><br>-and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>Nominal Defendant.<br><br>*[Caption continues on following page.]* | CASE NO. 12-CV-06003-CRB<br><br>**DECLARATION OF FRANCIS A. BOTTINI, JR. IN SUPPORT OF REPLY MEMORANDUM IN SUPPORT OF STANLEY MORRICAL'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF A LEADERSHIP STRUCTURE FOR PLAINTIFFS' COUNSEL**<br><br>Date:   March 1, 2013<br>Time:   10:00 a.m.<br>Ctrm:   6, 17th Floor<br>Judge:   Hon. Charles R. Breyer |

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

v

DECL. OF FRANCIS A. BOTTINI, JR. IN SUPPORT OF REPLY MEMO. IN SUPPORT OF MORRICAL'S MTN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF A LEADERSHIP STRUCTURE FOR PLAINTIFFS' COUNSEL

| | |
|---|---|
| ENERSTO ESPINOZA,<br><br>                    Plaintiff,<br>     v.<br><br>MICHAEL R. LYNCH, *et al.*,<br><br>                    Defendants,<br><br>     -and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>                    Nominal Defendant. | CASE NO. 12-CV-06025-CRB<br><br>Judge:                   Hon. Charles R. Breyer<br>Complaint Filed:   November 27, 2012 |
| ANDREA BASCHERI, *et al.*,<br><br>                    Plaintiffs,<br>     v.<br><br>LEO APOTHEKER, *et al.*,<br><br>                    Defendants,<br><br>     -and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>                    Nominal Defendant. | CASE NO. 12-CV-06091-CRB<br><br>Judge:                   Hon. Charles R. Breyer<br>Complaint Filed:   November 30, 2012 |
| MARTIN BERTISCH,<br><br>                    Plaintiff,<br>     v.<br><br>LEO APOTHEKER, *et al.*,<br><br>                    Defendants,<br><br>     -and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>                    Nominal Defendant. | CASE NO. 12-CV-06123-CRB<br><br>Judge:                   Hon. Charles R. Breyer<br>Complaint Filed:   December 3, 2012 |

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

v

DECL. OF FRANCIS A. BOTTINI, JR. IN SUPPORT OF REPLY MEMO. IN SUPPORT OF MORRICAL'S MTN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF A LEADERSHIP STRUCTURE FOR PLAINTIFFS' COUNSEL

| | |
|---|---|
| THE CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>LEO APOTHEKER, *et al.*,<br><br>Defendants,<br><br>-and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>Nominal Defendant. | **CASE NO. 12-CV-06416-CRB**<br><br>Judge: Hon. Charles R. Breyer<br>Complaint Filed: December 18, 2012 |
| JOSEPH TOLA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. LYNCH, *et al.*,<br><br>Defendants,<br><br>-and-<br><br>HEWLETT-PACKARD COMPANY,<br><br>Nominal Defendant. | **CASE NO. 12-CV-06423-CRB**<br><br>Judge: Hon. Charles R. Breyer<br>Complaint Filed: December 18, 2012 |
| STANLEY MORRICAL,<br><br>Plaintiff,<br><br>v.<br><br>MARGARET C. WHITMAN, *et al.*,<br><br>Defendants,<br><br>-and-<br><br>HEWLETT-PACKARD COMPANY,<br>Nominal Defendant. | **CASE NO. 12-CV-06434-CRB**<br><br>Judge: Hon. Charles R. Breyer<br>Complaint Filed: December 19, 2012 |

v
LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

DECL. OF FRANCIS A. BOTTINI, JR. IN SUPPORT OF REPLY MEMO. IN SUPPORT OF MORRICAL'S MTN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF A LEADERSHIP STRUCTURE FOR PLAINTIFFS' COUNSEL

I, Francis A. Bottini, Jr., declare as follows:

1. I am an attorney admitted to practice before this Court and all courts in the State of California. I am counsel for Plaintiffs Andrea Bascheri and Jim Chung in the above-referenced actions. I have personal knowledge of the facts stated herein. If called upon to do so, I could and would competently testify thereto.

2. Before the Court are two competing motions to consolidate shareholder derivative actions filed on behalf of Hewlett Packard Company ("HP") and to appoint lead plaintiff and lead counsel. Based on my experience thus far in the actions as counsel of record for two of the plaintiffs, and my experience with the law firms in this case acting on behalf of the plaintiffs, I support the proposed leadership structure set forth in the motion submitted by Plaintiffs Morrical, Bascheri, Chung, and Tola. I have worked in the past on numerous shareholder cases with all the plaintiffs' firms in this case who are seeking a leadership structure, and am familiar with their qualifications. Based not only on such qualifications, but also the specific facts of this case and the conduct of each relevant firm to-date with respect to the litigation of these actions, I support the Cotchett firm for sole lead counsel and the appointment of an Executive Committee to assist in the prosecution of the actions. I request that my firm be appointed to the Executive Committee.

3. My firm filed the third case in these related proceedings. Prior to filing the complaint, my firm spent substantial resources investigating the alleged wrongdoing, researching the applicable law and causes of action, and drafting a detailed and fact-specific complaint. My firm also has substantial experience in shareholder derivative actions, and litigated the *Brocade* stock option backdating derivative action before this Court.[1] In that case, as a result of work performed by my firm over approximately five years, the Brocade directors who served on the company's Special Litigation Committee eventually hired my prior firm, Johnson Bottini LLP, to be co-lead counsel to the company along with Dewey & LeBoeuf LLP. Brocade subsequently

---

[1] *In re Brocade Communications Systems, Inc.*, No. 05-cv-2233-CRB (N.D. Cal.).

filed a motion to re-align itself as a plaintiff in the case, and settlements in excess of $24 million were eventually reached in the case.

4. In addition to drafting and filing a detailed complaint in this case, my firm has also worked cooperatively with other plaintiffs' firms in the case and with defendants' counsel to organize the case. For example, my firm was the first firm to file an Administrative Motion to Relate Cases, which was granted by the Court and ensured that all related derivative actions were assigned to this Court. My firm has also worked with all counsel to arrive at a stipulation consolidating the cases and providing for agreed-to dates for defendants to respond to a single complaint after the cases are consolidated and lead counsel appointed. My firm has also effectuated service of my clients' complaint on the defendants.

5. I also took active steps to help organize the cases on the issue of a leadership structure for plaintiffs' counsel. This is a high-profile case and many complaints have been filed. As would be expected, many of the plaintiffs' firms desire to have a leadership role in the case. My experience is that most if not all courts prefer that plaintiffs' counsel attempt to arrive at a mutually-agreeable resolution of this issue. With that goal in mind, I engaged in substantial meet and confer efforts with all plaintiffs' counsel in the case on the leadership issue. Based on those efforts and the conduct of each firm during the meet and confer process, as well as their qualifications, I support the Cotchett firm for lead counsel and the appointment of an Executive Committee comprised of the Cotchett firm, my firm, and the Cafferty Clobes firm.

6. Under the facts of this case, I do not support the competing co-lead counsel structure proposed by the Robbins Arroyo firm and Saxena White. It is my belief that those firms (although fine firms and firms for which I have respect) have not shown the same degree of leadership efforts and inclusiveness as have the Cotchett firm, my firm, and the Cafferty Clobes firm. For example, when Robbins Arroyo filed its third complaint in this case, which listed itself and the Saxena White firm as counsel for the City of Birmingham retirement fund, Mr. Arroyo called me on my cellular telephone to discuss a leadership structure. He appeared to be in a

hurry and stated that he hoped my firm would support his firm for lead counsel. He indicated, in a manner I perceived to be cavalier, that if my firm supported his firm for lead, he would try to give my firm some work, but that his firm already had the case "pretty well staffed" and thus that he could not make any promise of any significant work. I responded to Mr. Arroyo that I was not even aware that the City of Birmingham fund had filed a complaint (apparently it had been filed the day before or even that same day) and that, since he had stated that one of the reasons he believed his firm should be lead counsel was the fact that his firm was allegedly representing an "institutional investor," that I would appreciate it if he would send me a copy of his complaint so that I could review it. He agreed to do so, and I suggested that we talk the following week so that we could have a fuller and more meaningful discussion on the important issue of a leadership structure for plaintiffs' counsel.

7. Mr. Arroyo subsequently failed to send me a copy of his complaint. When I sent him an email the following week asking him to do so, and suggesting that we schedule the follow-up call we had agreed to, Mr. Arroyo responded and apologized that he had not sent the complaint, but never did send the complaint and instead replied that his complaint was available on PACER. As to the call, he refused to conduct the follow-up call. I reminded him that we had agreed to have a further call, to which he flippantly responded that he thought it would be a waste of time.

8. In light of Mr. Arroyo's failure to engage in a meaningful discussion on the lead counsel issue, I sent an email on January 3, 2013 to all counsel for plaintiffs in the case suggesting an all-hands conference call to discuss the leadership issue. While Mr. Arroyo continued to espouse the view that further discussion would be a waste of time, all other counsel agreed to a call. Mr. Arroyo and his firm also subsequently agreed to participate in the call. The call was conducted on Tuesday, January 8, 2013.

9. During the January 8, 2013 call, several firms, including my firm, the Cotchett firm, Robbins Arroyo, and Saxena White indicated that they desired a lead counsel position in

the case. The Cotchett firm indicated it believed that there should only be one lead counsel, but that it would include other counsel meaningfully in the case and supported the creation of an Executive Committee so that they could draw on the strength and resources of other firms during the prosecution of the case. The Robbins Arroyo and Saxena White firms, in contrast, indicated that the only organizational structure that they would accept was being appointed as sole lead counsel, with no other law firm's participation.

10. During the call, I also asked Joe White of Saxena White for details concerning when the City of Birmingham fund bought and sold its Hewlett-Packard stock. He indicated he did not have the details. I asked him to obtain the details and let me know, but I never received the information. While the City of Birmingham indicates it currently holds approximately 70,000 shares of HP stock, and has held HP stock since approximately 2003, it has not provided proof that it has continuously held all 70,000 shares since 2003. It is possible that the fund has bought and sold HP shares since 2003, and it is also possible some or even a large number of the shares it currently owns were recently purchased after the significant drop in HP's share price. Thus, the fact that the fund has allegedly continuously owned at least some HP stock since 2003 is not the same thing as proof that it has continuously held all 70,000 shares.

11. Both before and after the January 8, 2013 call, I have had several phone conversations and email correspondence with several of the plaintiffs' firms in efforts to negotiate the leadership structure and attend to organizational matters such as the stipulation to consolidate the cases and provide for a schedule for defendants' responses to the complaints. The Cotchett firm has at all times been very professional and inclusive in its dealings with the other plaintiffs' counsel, and I believe that they are the best choice for lead counsel under the facts of this case.

12. Finally, I would note that the law is a personal services business, and it can make a significant difference which lawyers at a particular firm are assigned to any given case. In this case, both Mr. Cotchett and Mr. Molumphy are assigned to this case (among several other fine

attorneys at their firm) and have personally been active in the case. Obviously, Mr. Cotchett is one of the country's pre-eminent trial attorneys and has more trial experience than any of the other lawyers on the plaintiffs' side. He is a great asset and his inclusion in the leadership structure would greatly aid the prosecution of this case. Mr. Molumphy is also a seasoned partner on the case who has over twenty years of experience litigating complex securities cases for plaintiffs, and I have personally worked with Mr. Cotchett and Mr. Molumphy on cases over the last nineteen years during which I have been exclusively practicing plaintiffs' securities class action litigation. Mr. Arroyo, on the other hand, only joined Robbins Umeda LLP (as it was known until recently) in 2006, prior to which time he worked at a defense firm doing defense work, not plaintiffs' work. He is the lead partner at his firm assigned to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 15th day of February, 2013 at La Jolla, California.

*/s/ Francis A. Bottini*

FRANCIS A. BOTTINI, JR.